UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

In re:                                              :
                                                    :
     DREIER LLP,                               :    Case No. 14-cv-2353 (PAE)
                                                    :
                Debtor.        :
                                                    :
ALARMEX HOLDINGS, LLC,                              :
                                                    :
                Appellant,      :
                                                    :
    v.                                           :
                                                    :
SHEILA M. GOWAN,                                    :
                                                    :
                Appellee.      :
                                                    :

-------------------------------------------------------------- x

## APPELLANT'S MEMORANDUM OF LAW

FEDER KASZOVITZ LLP
845 Third Avenue
New York, New York 10022
Telephone (212) 888-8200

Attorneys for Appellant
Alarmex Holdings, LLC

Of Counsel:

Murray L. Skala
Jonathan Honig
David Sack

## Table of Contents

Page

Preliminary Statement ........................................................................................................1

Statement of Appellate Jurisdiction...................................................................................3

Statement of Facts .............................................................................................................3

Procedural Background .......................................................................................................4

ARGUMENT........................................................................................................................5

THE BANKRUPTCY COURT'S ORDER SHOULD BE REVERSED........................................5

    A.    Standard of Review ...........................................................................5

    B.    The Claim Involves Money Indisputably Consisting of
        Escrowed Trust Funds that are the Property of Alarmex .......................................5

    C.    Alarmex's Claim is Secured under 11 U.S.C. § 506(a)(1) ....................................8

    D.    In the Alternative, the Court Should Impose a
        Constructive Trust on the Escrowed Funds.........................................................11

    E.    The Bankruptcy Court's Holding ......................................................................13

CONCLUSION ....................................................................................................................13

## Table of Authorities

**Cases**

*Begier v. IRS*,
  496 U.S. 53 (1990) ...............................................................................6, 7, 10

*E.W. Lines v. Bank of America*,
  743 F. Supp. 176 (S.D.N.Y. 1990) ...................................................................11

*In re 100 Lindbergh Blvd.*,
  128 B.R. 53 (Bankr. E.D.N.Y. 1991) ..................................................................8

*In re DeTrano*,
  326 F.3d 319 (2d Cir. 2003) .............................................................................5

*In re Dreier LLP (Gardi v. Gowan)*,
  10 Civ. 4758 and 10 Civ. 5669 (S.D.N.Y. 2010) ...............................................11, 12

*In re Dreier LLP*,
  429 B.R. 112 (Bankr. S.D.N.Y 2010)....................................................................12

*In re Hooker Investments, Inc.*,
  155 B.R. 332 (Bankr. S.D.N.Y. 1993)...................................................................6

*In re Johns-Manville Corp.*,
  845 F.Supp. 2d 584 (S.D.N.Y. 2012) ...................................................................5

*In re Koreag, Controleet Revision S.A.*,
  961 F.2d 341 (2d Cir. 1992) ...........................................................................11

*In re Royal Business School*,
  157 B.R. 932 (Bankr. E.D.N.Y. 1993) ..................................................................6

*In re Salander-O'Reilly Galleries, LLC*,
  475 B.R. 9 (S.D.N.Y. 2012) ............................................................................6

*In re Teligent, Inc.*,
  640 F.3d 53 (2d Cir. 2011) .............................................................................5

*Matter of O.P.M. Leasing Services, Inc.*,
  46 B.R. 661 (Bankr. S.D.N.Y. 1985)..................................................................4, 6

*National Union Fire Ins. Co. v. Proskauer Rose Goetz & Mendelsohn*,
  165 Misc.2d 539, 634 N.Y.S.2d 609 (Sup. Ct. N.Y. Co. 1994) ................................11

*Tese-Milner v. Moon (In re Moon)*,
  385 B.R. 541 (Bankr. S.D.N.Y. 2008)...................................................................6

*Westinghouse Credit Corp. v. D'Urso*,
    278 F.3d 138 (2d Cir. 2002) ..................................................................................................2, 8

*Wilde v. Wilde*,
    576 F. Supp. 2d 595 (S.D.N.Y. 2008) ......................................................................................12

**Other Authorities**

11 U.S.C. § 101(37)..................................................................................................................3, 8

11 U.S.C. § 506(a)(1) .....................................................................................................2, 8, 9, 10

11 U.S.C. § 547(b)...........................................................................................................................6

28 U.S.C. §158(a)(1) ......................................................................................................................3

Fed. R. Bankr. P. 8001(a) .............................................................................................................3

U.S. CONST. amend. V. ..................................................................................................................8

Appellant Alarmex Holdings, LLC ("Alarmex"), by its attorneys, respectfully submits this memorandum of law in support of its appeal of the Bankruptcy Court's Order of February 11, 2014 (the "Order") sustaining Appellee Chapter 11 Trustee Sheila M. Gowan's (the "Trustee") objection to Alarmex's Claim No. 393 (the "Alarmex Claim"), denying priority to the Alarmex Claim, and reclassifying it as a general unsecured claim. For the reasons set forth herein, it is respectfully submitted that the Bankruptcy Court erred, and the Order should be reversed.

### Preliminary Statement

The Debtor is in possession of $200,991.87 that belongs to Alarmex. It is undisputed that those funds (the "Escrowed Funds") were given to the Debtor as escrow agent; that the Debtor accepted those funds in escrow; that pursuant to the terms of the escrow agreement, and by operation of New York law, the Debtor never took title to those funds, but was a mere stakeholder, and conduit as between Alarmex and CJ Apparel, Alarmex's counterparty in a transaction involving the sale of a business unrelated to the Debtor; and that pursuant to the terms of the escrow agreement, Alarmex is entitled to the Escrowed Funds.[1]

The Trustee has never provided any facts to indicate that Alarmex's money was not placed in escrow. To the contrary, her principal argument – that the Escrowed Funds were commingled with non-escrow funds – supports that indeed, Alarmex's Escrowed Funds were at all times, and up to the date of the Petition, in an escrow account as required. The Trustee also does not deny that as of the Petition Date, the Debtor had sufficient funds to turn over Alarmex's Escrowed Funds pursuant to the terms of the escrow and the agreement between Alarmex and CJ

---

[1] It is undisputed that CJ Apparel has repudiated any claim to the Escrowed Funds, and has acknowledged that Alarmex has the right to such funds. (*See* Notice of withdrawal, Dkt. No. 1705.)

Apparel.  Yet, the Trustee has consistently refused to provide Alarmex with an accounting of the

Escrowed Funds during the pre-petition and post-petition periods, although she undoubtedly has

access to this information.

Instead, contrary to well-established New York law governing trust and escrow funds,

and contrary to the federal bankruptcy law, the Trustee takes the position that Alarmex's funds

should be taken into and become part of the bankruptcy estate and shared *pro rata* with the

Debtor's general creditors, who are not in the same shoes as Alarmex.  This position is untenable

as a matter of law. *See Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 150 (2d Cir. 2002)

(distinguishing between the claim of a trust beneficiary and a general unsecured creditor whose

claims arise from contract).  Unlike the general creditors, Alarmex never gave the Debtor any

funds with which to invest, never purchased any fraudulent notes from the Debtor, never

extended any credit to the Debtor, and in fact, never had any business dealings with the Debtor

whatsoever.  Rather, Alarmex's funds were always escrow funds pursuant to the terms of an

asset purchase agreement (the "APA"), which established the Debtor as an escrow agent.  It is

undisputed that pursuant to the APA, the Debtor accepted the Escrowed Funds, and presumably

deposited them into its escrow account as required.  That the Debtor may have commingled other

funds – including fraudulently obtained funds – into its escrow account does not change the

nature of Alarmex's funds as trust funds or the nature of the relationship between Alarmex and

the Debtor.  Nor does it make sense that because other funds were supposedly deposited into the

Debtor's escrow account which held Alarmex's escrow funds, those escrow funds should

therefore become available for payment to the general unsecured creditors.

Accordingly, Alarmex's claim to its funds is superior to that of the Debtor's creditors,

and its claim is secured pursuant to 11 U.S.C. § 506(a)(1) in that it has a "lien," as defined by 11

U.S.C. § 101(37), on the funds.[2]  Alternatively, the facts in this case establish that the
Bankruptcy Court should have imposed a constructive trust over the Escrowed Funds for
Alarmex's benefit.  In either event, the Bankruptcy Court's Order was in error, and should be
reversed, and the Trustee's objection dismissed.

**Statement of Appellate Jurisdiction**

This Court has jurisdiction to review the final Order of the Bankruptcy Court pursuant to
28 U.S.C. § 158(a)(1), and Fed. R. Bankr. P. 8001(a).  A timely notice of appeal of the Order
(Dkt. No. 1865) was filed with the Bankruptcy Court on February 25, 2104.

**Statement of Facts**

The facts of this case are largely undisputed.[3]  In December 2006, approximately two
years prior to the Petition Date, CJ Apparel agreed to purchase Alarmex's assets.  The Debtor
represented CJ Apparel in connection with that purchase transaction.  (Objection ¶ 11)  In
connection with the sale, the parties entered into the APA.  (Declaration of Jonathan Honig
("Honig Decl."), Ex. 1) (Dkt. No. 1811)  Pursuant to ¶ 3.1(b) of the APA, $500,000 was
withheld from the $10 million purchase price and provided to Debtor as Escrowee, to be held in
escrow.  Pursuant to ¶ 10.6 of the APA, an additional $300,000 was placed in escrow, and
presumably deposited into the Debtor's escrow account at JP Morgan Chase.  Slightly less than
$600,000 of the Escrowed Funds was subsequently distributed to the parties by Debtor leaving a
balance of $200,991.87 in escrow in Debtor's possession.  (Objection, Exhibit A, attachment 2)

---

[2] The Trustee has never denied that the Escrowed Funds were placed in escrow as they
were supposed to be, and remained there at least until the Petition Date.

[3] *See* Transcript of the February 11, 2014 hearing before Judge Bernstein ("Tr.") at 10:24-
11:1  ("Mr. Loden: So we can stipulation [*sic*] to probably 99 percent of the facts that
ALARMEX relies upon for their claim.") (Dkt. No. 1864).

3

The APA, as well as established New York law, makes it clear that the Debtor had no ownership interest whatsoever in the Escrowed Funds and that Debtor was merely a stakeholder, holding the funds in trust for the benefit of the parties. (APA ¶ 13.1; *see Matter of O.P.M. Leasing Services, Inc.*, 46 B.R. 661, 667 (Bankr. S.D.N.Y. 1985) ("under New York law legal title to property placed in escrow remains with the grantor until the occurrence of the condition specified in the escrow agreement").) Thus, ¶ 13.1 of the APA provides that:

> The Escrowee shall hold the Escrow Amount in a segregated bank account at JP Morgan Chase for the Escrow Period and in accordance with the terms of this Agreement. Escrowee shall hold the Escrow Amount in an interest-bearing account for the benefit of the Parties. If interest is held for the benefit of the Parties, it shall be paid to the Party entitled to the Escrow Amount and the Party receiving the interest shall pay any income taxes thereon. The Social Security or Federal Identification numbers of the Parties shall be furnished to Escrowee upon request.

Further, ¶ 13.3 of the APA provides that: "The Parties acknowledge that Escrowee is acting solely as a *stakeholder* at their request and for their convenience …." (emphasis added).

As Debtor acknowledges (Objection, Exhibit A, attachment 2), there was a balance of $200,991.87 in escrow when the Debtor filed for bankruptcy under Chapter 11. Alarmex has clear entitlement to the Escrowed Funds pursuant to the agreement reached with CJ Apparel. (Honig Decl., Exhibit 2)

### Procedural Background

On December 16, 2008 (the "Petition Date"), Debtor commenced a voluntary case under Chapter 11 of the Bankruptcy Code. On February 18, 2009, the Bankruptcy Court entered an order (Dkt. No. 138) setting March 31, 2009 as the bar date with respect to proofs of claim. On or about March 27, 2009, Alarmex filed the Alarmex Claim which provided for payment of the Escrowed Funds to it on a priority basis. On March 31, 2009, CJ Apparel filed proof of claim

4

number 558, also asserting that it should be paid the Escrowed Funds; this claim by CJ Apparel was withdrawn with prejudice, acknowledging that Alarmex is the only party with rights to the Escrowed Funds. (*See* Notice of Withdrawal, Dkt. No. 1705.)

On November 6, 2013, the Trustee filed her Objection to the Alarmex Claim. (Dkt. No. 1712) On January 16, 2014, Alarmex filed its opposition to the Trustee's Objection. (Dkt. No. 1810) On February 11, 2014, the Bankruptcy Court held brief oral argument on the Trustee's Objection, and signed the Order. (Dkt. No. 1852, filed on February 14, 2014) On February 25, 2014, Alarmex filed a timely Notice of Appeal from the Bankruptcy Court's Order. (Dkt. No. 1865)

## ARGUMENT

## THE BANKRUPTCY COURT'S ORDER SHOULD BE REVERSED

### A.    Standard of Review

When acting as an appellate court to review the Bankruptcy Court's Order, the District Court reviews the Bankruptcy Court's conclusions of law *de novo*.[4] *In re DeTrano*, 326 F.3d 319, 321 (2d Cir. 2003); *In re Teligent, Inc.*, 640 F.3d 53, 57 (2d Cir. 2011); *In re Johns-Manville Corp.*, 845 F.Supp. 2d 584, 592 (S.D.N.Y. 2012).

### B.    The Claim Involves Money Indisputably Consisting of Escrowed Trust Funds that are the Property of Alarmex

New York law is well-settled that an escrow agent does not take title to escrowed funds. He acts as a trustee and fiduciary on behalf of the parties to the escrow agreement, and undertakes not to release the escrowed funds except upon the terms expressly set forth by the

---

[4] The Bankruptcy Court's findings of fact are reviewed for clear error, but the Bankruptcy Court here made no findings of fact, basing its decision solely on propositions of law with respect to the status of the Escrowed Funds. (Tr. 12:10; 13:17-14:10)

parties. *O.P.M. Leasing*, 46 B.R. at 667; *In re Royal Business School*, 157 B.R. 932, 938-39 (Bankr. E.D.N.Y. 1993); *In re Hooker Investments, Inc.*, 155 B.R. 332, 337 (Bankr. S.D.N.Y. 1993).

The Debtor, as escrow agent, thus never had legal title to the Escrowed Funds, and title never passed to the bankruptcy estate. This status was recognized by the Supreme Court in *Begier v. IRS*, 496 U.S. 53, 59 (1990), when the Court held "Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.' Nor is such an equitable interest 'property of the debtor' for purposes of §547(b)."[5] The Court therefore concluded that trust funds are the property of the intended beneficiary, not the party holding such funds for the benefit of the beneficiary. This principle was followed by the Bankruptcy Court in *Tese-Milner v. Moon (In re Moon)*, 385 B.R. 541 (Bankr. S.D.N.Y. 2008), where the court concluded that an attorney does not have ownership of its trust account funds but rather, the attorney "had no discretion or authority to do anything else but transmit the money." (*Id.* at 553)  *See In re Salander-O'Reilly Galleries, LLC*, 475 B.R. 9, 23 (S.D.N.Y. 2012) (non-estate property is returned to its owner).

It is thus clear that the Escrowed Funds were and are trust funds belonging to Alarmex, and that Debtor never had any right to the funds; never had any ownership interest in them; and as such, they never became part of the bankruptcy estate. *Royal Business School*, 157 B.R. at 940.  Rather, the Escrowed Funds were, at all times, and remain property of Alarmex held by the Debtor for Alarmex's benefit.

---

[5] 11 U.S.C. § 547(b) grants the trustee the power to avoid preferential transfers.

In her Objection, the Trustee does not challenge this proposition of law, nor does she attempt to distinguish *Begier* and the other cases applying its holding. Nor does the Trustee challenge that the Escrowed Funds were properly placed in the Debtor's escrow account, and were not disbursed prior to the Petition Date. The only arguments the Trustee makes are that the Escrowed Funds, while remaining at all times in escrow, were commingled with additional funds of the Debtor being deposited into the escrow account where they did not belong. (Objection ¶ 9) Additionally, the Trustee argues that all the funds in an escrow account were seized by the government on August 27, 2010, approximately a year and a half after the Petition Date. (Objection ¶¶ 10, 16)

But the fact that non-escrow money may have been placed in an escrow account (and not *vice versa*) does not alter the status of the escrow funds that were at all times maintained by the Debtor as escrow. The Trustee cites no authority for the proposition that title to or ownership of escrow funds changes as a result of other funds being deposited in the same account. Moreover, although the Trustee alleges that funds were removed from an account that the Debtor labeled as an escrow account to fund Marc Dreier's personal expenses (Objection ¶ 9), she does not allege that Alarmex's Escrowed Funds were ever removed, and does not cite any authority supporting the proposition that the removal of some funds from escrow which did not belong there destroys the entire escrow and places title and ownership of the escrow funds in the escrow agent. In short, the fact that the Debtor may have deposited and withdrawn non-escrow funds from its escrow account did absolutely nothing to disturb title to and the status of the Escrowed Funds.[6]

---

[6] Under the Trustee's argument, where a purchaser of a home places his down payment in escrow with the seller's attorney, and where the seller's attorney subsequently placed non-escrow funds in the same account and declares bankruptcy prior to the closing, such purchaser would not be entitled to a return of his down payment (or to have the payment go to the seller at closing), but rather, the down payment would be brought into the bankruptcy estate, and shared

7

Furthermore, to the extent that the Trustee argues that she is somehow exonerated from returning the Escrowed Funds because those funds may have been seized by the government (which assumes that those funds were in the 5966 Account) – it being unstated whether that account was an escrow account or an non-escrow account – is an argument that misses the point entirely. If the 5966 Account was an escrow account, as apparently now claimed by the Trustee, she had no right to turn over the Escrowed Funds to anyone other than their rightful owner, to wit, Alarmex. In the same vein, the government had no right to seize those funds, as they were not property of the Debtor.[7]

Neither of the Trustee's arguments as to why Alarmex should not receive the Escrowed Funds are meritorious in light of the fact that neither commingling nor seizure by the government, some two years later, wrested title to and ownership of the Escrowed Funds from Alarmex.

### C.   Alarmex's Claim is Secured under 11 U.S.C. § 506(a)(1)

11 U.S.C. §506(a)(1) allows a "claim of a creditor secured by a lien on property." "Lien" is defined in 11 U.S.C. §101(37) as a "charge against or interest in property to secure … performance of an obligation." Here, the Debtor had and has an undisputable obligation to

---

with the attorney's general creditors. This is not the law. In *Westinghouse Credit Corp.*, 278 F.3d at 150, the Second Circuit recognized that the debtor's obligation to return escrowed funds to their rightful owner was different from the debtor's contractual obligation to pay creditors. The Court thus allowed payment from escrow funds as to which ownership was decided pursuant to an escrow agreement to their rightful owner, and disallowed the payment from escrow funds of a claim arising from judgment on a lease and promissory note. *See also In re 100 Lindbergh Blvd.*, 128 B.R. 53, 57 (Bankr. E.D.N.Y. 1991) (down payments were not part of the bankruptcy estate so as to be subject to a turnover proceeding where the debtor agreed with its counterparty to release those payments from escrow prior to the Petition Date).

[7] Indeed, the government's taking of Alarmex's money, if that was in fact what occurred, without providing Alarmex with notice and an opportunity to be heard, would seem to be a *per se* violation of Alarmex's Constitutional right to due process. *See* U.S. CONST. amend. V.

return the Escrowed Funds to their rightful owner – Alarmex.  Alarmex's legal ownership of the Escrowed Funds thus constitutes a "charge against" and "interest in" the funds held in escrow by the Debtor.  Unlike the Debtor's general creditors, Alarmex's claim is not against the Debtor, but rather against funds that are in the Debtor's possession.  Accordingly, Alarmex's claim is both superior to those of the general creditors, and secured by the funds already in the Debtor's possession.

For the same reasons set forth above – commingling and seizure – the Trustee argues that Alarmex is not entitled to any priority with respect to the return of its funds.  This argument is circular in that is proceeds from the premise that Alarmex does not have a priority claim on the Escrowed Funds, and would therefore shift the burden of demonstrating entitlement to Alarmex. (Objection ¶¶ 14-16)  But this flies in the face of the documentary evidence previously submitted by Alarmex (Honig Decl., Exhibits 1-2) that establishes Alarmex's priority as a consequence of its pre-existing title to the funds held in escrow, and the evidence that the Debtor had possession of the Escrowed Funds prior to the Petition Date.  (*Id.* Exhibit 3)  As a matter of law, neither the fact that non-escrow funds were deposited into an escrow account, nor the government's seizure of funds related to the criminal Ponzi enterprise destroys the escrow status of the funds and Alarmex's superior entitlement thereto.  Thus, the Trustee cannot dispute that the funds that are at issue here are trust funds that do not, and never have, belonged to the Debtor, and were, on the Petition Date, segregated in trust for their owner.  There can be no more sacred "charge against" or "interest in property" than an escrow relationship; and accordingly, a priority claim as defined in 11 U.S.C. §506(a)(1), exists in the Escrowed Funds.[8]

---

[8] Indeed, the Second Amended Plan of Liquidation, approved April 29, 2014, specifically provides for the Escrowed Funds to be retained by the Debtor.

The Trustee's argument (Objection ¶ 15) based on a policy of equality of distribution is also meritless. First, as demonstrated by the Supreme Court's holding in *Begier*, and in the lower court cases following *Begier's* holding, the Escrowed Funds never entered the bankruptcy estate, and would not be otherwise available to pay the Debtor's other creditors. Moreover, even assuming, *arguendo* and contrary to *Begier*, that the Escrowed Funds could be claimed by the bankruptcy estate, many bankruptcy claimants are accorded preferred status. It is only the general creditors who are to face equality of distribution. Here, Alarmex is not a creditor in the ordinary sense, but a party with a trust relationship with Debtor, a party that owns the funds that are at issue. Unlike the Debtor's general creditors, Alarmex did not "sign up" to take risk by becoming a creditor; it agreed that Debtor would hold its money in escrow, and the Debtor acknowledged that it was only a "stakeholder." Accordingly, the case law cited in paragraph 15 of the Objection, which pertains to parties that do not have an entitlement such as that held by Alarmex due to its ownership of the trust funds, is entirely irrelevant.

Contrary to the Trustee's position (Objection ¶ 16), where, as here, a party has a trust relationship rather than a creditor relationship, there is already a priority of right to the Escrowed Funds securing the Debtor's obligation, by operation of law, to pay the balance to its rightful owner. Whether that money was seized by the Trustee, the government, or anyone else is irrelevant because any such seizure did not change the status of those funds.

In short, the Trustee's conclusory argument that "the Alarmex Claim does not qualify as a secured claim under §506(a)(1)" (*cf.* Objection ¶16), should be rejected where, as here, the undisputed facts are that the Debtor took the funds solely as a "stakeholder" and presumably placed them in a segregated escrow account. Because the nature of the trust funds did not permit the Debtor to take title to those funds, but rather created a legal obligation for the Debtor to turn

10

over the funds to Alarmex pursuant to the express requirements of the trust, the Debtor is now

required to remit the Escrowed Funds to their owner, Alarmex.

### D.      In the Alternative, the Court Should Impose a Constructive Trust on the Escrowed Funds

Even in the event that the Court does not require that the Escrowed Funds be returned to

Alarmex by reason of the actual trust relationship it had with the Debtor, the Court should

impose a constructive trust on the Escrowed Funds.

New York law requires four elements to establish a constructive trust: (1) a confidential

or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that

promise; and (4) unjust enrichment. *See In re Koreag, Controleet Revision S.A.*, 961 F.2d 341,

352 (2d Cir. 1992). *See also E.W. Lines v. Bank of America*, 743 F. Supp. 176 (S.D.N.Y. 1990)

(citing *Koreag*). In *E.W. Lines*, a party with a right to draw on one letter of credit improperly

and wrongfully drew on two letters of credit, an original and a replacement. The court had no

trouble imposing a constructive trust on those facts because there "Occidental was not authorized

or entitled to draw upon two sets of letters of credit, when it knew that the second set was a

replacement for the first." *Id.* at 181. The alleged attempted misappropriation or theft of escrow

funds here is yet more egregious, as the escrow agent becomes a fiduciary and trustee of the

parties, owing them a duty of the highest loyalty, as well as a duty not to dissipate the Escrowed

Funds. *National Union Fire Ins. Co. v. Proskauer Rose Goetz & Mendelsohn*, 165 Misc.2d 539,

551, 634 N.Y.S.2d 609, 618 (Sup. Ct. N.Y. Co. 1994).

The decision by Judge Batts in *In re Dreier LLP (Gardi v. Gowan)*, 10 Civ. 4758 and 10

Civ. 5669 (S.D.N.Y. 2010), is not to the contrary, as the funds in question there were never trust

funds, but rather were fraudulently obtained and were "voluntarily transferred to Dreier LLP's

5966 Account by Gardi's adversary" (*id.* at 13), giving rise to a debtor/creditor relationship, and thus bringing those funds into the bankruptcy estate.

The Trustee's reliance on *In re Dreier LLP*, 429 B.R. 112, 136-8 (Bankr. S.D.N.Y 2010), is misplaced because there the claimant was a creditor, albeit a client, who gave money to Dreier outside the escrow context. Here, taking property for the estate to which it never belonged would clearly unjustly enrich the estate. Nor does Alarmex's claim involve the commingled proceeds of a Ponzi scheme. Rather, the funds here are trust funds belonging to Alarmex at all times.

The Trustee's reliance below on *Wilde v. Wilde*, 576 F. Supp. 2d 595 (S.D.N.Y. 2008), is similarly misplaced. There, the court analyzed restitution, constructive trust, and equitable accounting, and held that in circumstances of a violation of duty (arising from a power of attorney) restitution was in fact required, and an equitable accounting did not have to relate to any "special account." The *Wilde* court emphasized the normative requirement to uphold a sacred trust. 576 F. Supp. 2d at 604 ("A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief"). Further, the court stated that "in view of equity's goal of softening where appropriate the harsh consequences of legal formalisms, in limited situations the tracing requirement may be relaxed…. It is appropriate to relax the tracing requirements where a fiduciary has breached his duty." 576 F. Supp. 2d at 605. Here, where the Debtor only held the funds in escrow expressly for Alarmex, the same outcome is even more compelling. Accordingly, the Court, exercising its equitable powers, should order restitution in full.

### E.     The Bankruptcy Court's Holding

The Order upheld the Trustee's Objection "for the reasons stated on the record of the Hearing." (Dkt. No. 1852)  On the record, however, the Bankruptcy Court did not make any findings of fact – it never ruled that the funds in question were not escrow funds.  As to its conclusions of law, the Bankruptcy Court rejected Alarmex's argument that the Escrowed Funds should not be incorporated into the bankruptcy estate for distribution *pro rata* with the general creditors, but rather returned to Alarmex in full as trust funds, and simply stated, without amplification, "Well we disagree on the law." (Tr. 12:10)  The Court further concluded as a matter of law that the Escrowed Funds, although not proceeds of the criminal Ponzi scheme and were never property of the Debtor, were subject to forfeiture by the government, and Alarmex could not, therefore, assert a secured claim to those funds even though sufficient funds currently exist to remit the Escrowed Funds to Alarmex.  (Tr. 13:19-14:3)

It is respectfully suggested that, for the reasons set forth above, the Bankruptcy Court erred as a matter of law by refusing to treat the Escrowed Funds as trust funds separate and apart from funds that were voluntarily remitted to the Debtor, as part of a criminal Ponzi scheme or otherwise, by people who agreed to establish a creditor relationship with the Debtor.  It is further submitted that, for the reasons set forth above, Alarmex has good title to and ownership of the Escrowed Funds, and there is therefore no need to trace the proceeds, as suggested by the Court (Tr. 14:5-8), as a prerequisite to impose a trust – actual or constructive.

### CONCLUSION

For the reasons stated herein, Alarmex respectfully suggests that the Bankruptcy Court erred as a matter of law by refusing to recognize its priority claim to the Escrowed Funds.

13

Accordingly, the Order should be reversed; the Objection dismissed; Alarmex's claim should be reinstated; and the Debtor should be ordered to repay to Alarmex the Escrowed Funds in full.

Dated: New York New York
       May 12, 2014

                                        Respectfully submitted,


                                        FEDER KASZOVITZ LLP



                                        By:____/s/ Murray L. Skala_____
                                              Murray L. Skala
                                              Jonathan Honig
                                              David Sack
                                        845 Third Avenue
                                        New York, New York 10022
                                        Telephone: (212) 888 8200

                                        Attorneys for Alarmex Holdings, LLC