UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                          :
*In re*:  DREIER LLP,                                     :
                                                          :          14 Civ. 2353 (PAE)
                                     Debtor.              :
------------------------------------------------------------:       OPINION & ORDER
                                                          :
   ALARMEX HOLDINGS, LLC,                                  :
                                                          :
                                     Appellant,           :
                                                          :
                   -v-                                    :
                                                          :
   SHEILA M. GOWAN,                                        :
   CHAPTER 11 TRUSTEE FOR DREIER LLP,                      :
                                                          :
                                     Appellee.            :
------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        Alarmex Holdings, LLC ("Alarmex") appeals from the February 14, 2014 Order of the

United States Bankruptcy Court for the Southern District of New York (Bernstein, J.) ("Order"),

issued in the Chapter 11 bankruptcy case of the law firm Dreier LLP, *In re: Dreier LLP*, No. 08–

15051 (SMB) (the "Dreier LLP bankruptcy").  That Order granted an objection by the Chapter

11 Trustee, Sheila M. Gowan ("Gowan" or the "Trustee"), and reclassified Alarmex's Claim No.

393 (the "Alarmex claim") as a general unsecured claim on the Dreier LLP bankruptcy estate.

        Alarmex appeals on two grounds:  First, because Dreier LLP was supposed to hold the

funds at issue in escrow, Alarmex asserts that it is entitled to a secured, priority claim, pursuant

to 11 U.S.C. § 506(a)(1).  Such a priority claim would entitle Alarmex to be paid ahead of the

estate's other creditors.  Alternatively, Alarmex asserts that the bankruptcy court should have

imposed a constructive trust over the estate's property for Alarmex's benefit.

For the reasons that follow, the bankruptcy court's Order is vacated and the case remanded for further factual development.

## I.     Background[1]

The facts underlying the Dreier LLP fraud and bankruptcy have been set out in detail in several prior decisions in this District.  *See, e.g.*, *United States v. Dreier*, 682 F. Supp. 2d 417, 422 (S.D.N.Y. 2010) ("*Dreier I*"); *United States v. Dreier*, No. 09 Cr. 085 (JSR), 2010 WL 1223087 (S.D.N.Y. Mar. 24, 2010) ("*Dreier II*"); *In re Dreier LLP*, 429 B.R. 112, 117–19 (Bankr. S.D.N.Y. 2010) ("*Dreier III*"); *In re Dreier LLP*, No. 10 Civ. 4758 (DAB), 2010 WL 3835179 (S.D.N.Y. Sept. 10, 2010) ("*Dreier IV*"); *In re Dreier LLP*, 452 B.R. 391 (Bankr. S.D.N.Y. 2011) ("*Dreier V*").  The Court assumes familiarity with these decisions and sets out here only the facts most germane to this appeal.

### A.     Dreier's Fraud Scheme

Dreier LLP was a law firm based in New York City that employed some 300 people. *Dreier III*, 429 B.R. at 118.  Marc S. Dreier ("Dreier") was the firm's sole equity partner.  *Id.* Between 2004 and 2008, Dreier ran a Ponzi scheme, selling fraudulent promissory notes to hedge funds and individual investors (the "note fraud scheme"); Dreier stole approximately $700 million via this scheme.  *Id.*  Virtually all of Dreier's fraud proceeds were deposited into a specific LLP attorney trust account held at JP Morgan Chase bearing the last four digits "5966" (the "5966 account").  *See* Dkt. 1712 ("Trustee's Objection") ¶ 8.  Dreier used this account to pay principal, interest, and fees to the investors in the Ponzi scheme, to "fund his lifestyle," and to subsidize his law firm's operations.  *Dreier III*, 429 B.R. at 118.  He also deposited client

---

[1] Unless otherwise noted, all docket numbers reflect the docket of the underlying bankruptcy case, *In re Dreier*, No. 08–15051 (SMB).

funds into the same account.  *Id.*  Therefore, although the 5966 account was titled an "escrow" or "attorney trust" account, it is undisputed that Dreier commingled operating revenues from his law firm, funds from his clients, and investments from his note fraud victims in that account. Trustee's Objection ¶ 9.

On December 7, 2008, Dreier was indicted in this District and arrested.  *Id.* at ¶ 3; *Dreier III*, 429 B.R. at 118.  On December 8, 2008, the Securities and Exchange Commission (the "SEC") filed a civil complaint alleging that Dreier had violated the securities laws of the United States.  *Dreier IV*, 2010 WL 3835179, at *2.  "Two days later, the Honorable Miriam G. Cedarbaum of this District appointed a receiver for Dreier's assets (the 'Receiver') and temporarily restrained the assets of Dreier and his law firm, Dreier LLP."  *Id.*  On December 16, 2008 (the "petition date"), the Receiver commenced a voluntary Chapter 11 proceeding on behalf of Dreier LLP; appellee Gowan was appointed as the chapter 11 trustee of the Dreier LLP estate. *Id.*; Trustee's Objection ¶ 5.

On March 17, 2009, Dreier pled guilty before the Honorable Jed S. Rakoff to charges of conspiracy, securities fraud, wire fraud, and money laundering.  *See United States v. Dreier*, No. 09 Cr. 85 (JSR).  On July 13, 2009, Judge Rakoff signed an Order of Forfeiture/Preliminary Order of Forfeiture as to Specific Properties, which ordered Dreier to forfeit, *inter alia*, "property constituting or derived from proceeds obtained as a result of the fraud offenses . . . and property traceable to such property."  *Id.* Dkt. 85 (the "Preliminary Forfeiture Order").  Specific properties forfeited included "[a]ny and all funds in [the 5966 Account] held at JP Morgan Chase in the name of Dreier LLP."[2]  Preliminary Forfeiture Order, Schedule A, Item 13.

---

[2] Judge Rakoff sentenced Dreier to a 20-year prison term.  *See Dreier V*, 452 B.R. at 399.

On August 27, 2010, Judge Rakoff issued a Final Order of Forfeiture, which, in relevant part, was identical to the Preliminary Forfeiture Order.  *See id.* Dkt. 156 (the "Final Forfeiture Order").

### B.    The Alarmex Claim

In December 2006, about two years before Dreier was arrested, CJ Apparel Group, LLC ("CJ Apparel") agreed to purchase assets from Alarmex.  Dreier LLP represented CJ Apparel in connection with that purchase.  Dkt. 1810.

On December 22, 2006, the parties entered into an Asset Purchase Agreement to consummate the sale.  Dkt. 1811 (Declaration of Jonathan Honig ("Honig Decl.")) Ex. 1 ("APA").  Pursuant to ¶ 3.1(b) of the APA, $500,000 was withheld from the $10 million purchase price and provided to Dreier LLP, the "Escrowee," to be held in escrow.  *See* APA ¶ 3.1(b) (purchaser shall pay "to the Escrowee, an aggregate of $500,000 to an account designated by Escrowee, to be maintained in accordance with the terms of Article 12 of this Agreement (the 'Escrow Amount')").  Under ¶ 10.6 of the APA, an additional $300,000 was placed in escrow for "holdback" purposes, for a total of $800,000.  The APA defined Dreier LLP's role as "Escrowee" or "escrow agent," as follows:

> The Escrowee shall hold the Escrow Amount in escrow in a segregated bank account at JP Morgan Chase for the Escrow Period and in accordance with the terms of this Agreement.  Escrowee shall hold the Escrow Amount in an interest-bearing account for the benefit of the Parties.  If interest is held for the benefit of the Parties, it shall be paid to the Party entitled to the Escrow Amount and the Party receiving the interest shall pay any income taxes thereon.  The Social Security or Federal Identification numbers of the Parties shall be furnished to Escrowee upon request.

APA ¶ 13.1.

As of July 12, 2007, slightly more than $600,000 of the escrow funds had been distributed to the parties.  *See* Trustee's Objection Ex. A, Attachment 2.  Including the interest

that had accrued in the seven months since the purchase agreement, the total amount remaining in escrow as of July 12, 2007 was $200,991.87.  *Id.*

As noted, Dreier was indicted and arrested on December 7, 2008, and the voluntary Chapter 11 proceeding on behalf of Dreier LLP commenced on December 16, 2008.

On March 27, 2009, shortly before the "bar date" of March 31, 2009, Alarmex filed claim No. 393 against the Dreier LLP bankruptcy estate.[3]  Trustee's Objection ¶ 13; *id.* Ex. A.  In its claim, Alarmex asserted that it was owed $200,991.87 by the estate, and that it was entitled to be paid on a secured basis ahead of other creditors.  Trustee's Objection Ex. A.

On November 6, 2013, the Trustee objected to Alarmex's claim.  Dkt. 1712.  The Trustee asserted, *inter alia*, that she was unable to locate, within the accounts held by Dreier and/or Dreier LLP in JP Morgan Chase, any segregated sub-account designated as having belonged to Alarmex or CJ Apparel.  The Trustee concluded, on that basis, that the funds at issue must have been deposited into the 5966 account.  *Id.* Ex. B (the Declaration of Sheila Gowan ("Gowan Decl.")) ¶¶ 6, 7.  On January 16, 2014, Alarmex filed an opposition to the Trustee's Objection. Dkt. 1810.

On February 11, 2014, the bankruptcy court heard argument and, then, on the record, granted the Trustee's objection.  Specifically, the bankruptcy court held as follows:

> First of all is you [*i.e.*, Alarmex] have no secured claim.  To the extent you're saying that you were secured by the property that was stolen from you[,] that money—any money in the account as of the petition date[—]was forfeited to the United States, and under forfeiture law it was never property of the estate.
>
> So to the extent you have a secured claim, and I don't think you do, you have it in property, which isn't property of the estate, which is not a secured claim in bankruptcy.

---

[3] On March 31, 2009, CJ Apparel filed proof of claim No. 558, which asserted that CJ Apparel, not Alarmex, was entitled to the funds in escrow.  On October 25, 2013, CJ Apparel withdrew its claim with prejudice.  *See* Dkt. 1705.

> Second for the reasons I stated in the—in connection with the GSO settlement in
> my decision I would not be inclined to permit you to trace in a Ponzi scheme case
> or impose a constructive trust even if you could trace the money into the account
> of the estate, which you can't.

Dkt. 1864 ("Feb. 11, 2014 Tr.") at 13–14.

On February 14, 2014, the bankruptcy court issued an Order, in which, for the "reasons stated on the record of the Hearing," it "recharacterized" the Alarmex claim as a "general unsecured claim." Dkt. 1852. On February 25, 2014, Alarmex filed a timely Notice of Appeal. Dkt. 1865.

On April 3, 2014, Alarmex's appeal was filed in this Court. *In re: Dreier*, No. 14 Civ. 2353 (PAE) (S.D.N.Y. filed Apr. 3, 2014), Dkt. 1. On May 12, 2014, Alarmex submitted its memorandum of law in support of its appeal. *Id.* Dkt. 7 ("Alarmex Br."). On May 27, 2014, the Trustee submitted an opposition brief. *Id.* Dkt. 9 ("Trustee Br."). On June 10, 2014, Alarmex filed a reply brief. *Id.* Dkt. 10 ("Alarmex Reply Br.").

## II.    Applicable Legal Standards

Under Rule 8013 of the Federal Rules of Bankruptcy Procedure, this Court "may affirm, modify, or reverse [the] bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. The bankruptcy court's findings of fact are reviewed for clear error, while its legal conclusions are reviewed *de novo*. *Pleasant v. TLC Liquidation Trust (In re Tender Loving Care Health Servs.)*, 562 F.3d 158, 161 (2d Cir. 2009. The Court reviews "mixed questions of law and fact either *de novo* or under the clearly erroneous standard depending on whether the question is predominantly legal or factual." *United States v. Selioutsky*, 409 F.3d 114, 119 (2d Cir. 2005); *see also Bay Harbour Mgmt., L.C. v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings, Inc.)*, 415 B.R. 77, 83 (S.D.N.Y.

2009). A finding of fact is clearly erroneous, and thus may be set aside, if the reviewing court has a "definite and firm conviction" that a mistake has been made by the bankruptcy court. *Ortega v. Dunn*, 333 F.3d 102, 106–07 (2d Cir. 2003); *Best Payphones, Inc. v. Manhattan Telecomms. Corp. (In re Best Payphones, Inc.)*, 432 B.R. 46, 53 (S.D.N.Y. 2010).

### III.   Discussion

In this appeal, Alarmex makes two arguments.

First, it asserts that the bankruptcy court should have granted it a secured claim against the Dreier LLP bankruptcy estate. Alarmex Br. at 8–9. A "secured claim" is defined in the statute as follows:

> An allowed claim of a creditor secured by a lien *on property in which the estate has an interest*, . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C.A. § 506(a)(1) (emphasis added). A "lien" is a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). Alarmex appears to assert that, because the funds at issue were placed in escrow, it has a lien, or interest, in those funds, and that, as such, it is entitled to a secured claim on the estate. That claim is not meritorious, because, as explained below, funds held in escrow are not part of Dreier LLP's bankruptcy estate at all, and thus do not constitute "property in which the estate has an interest."

Alarmex's second argument is that Dreier LLP never had a legal or equitable interest in the escrow funds at issue, because they were escrow funds, and that those funds should therefore be returned to Alarmex rather than being incorporated into the Dreier LLP bankruptcy estate. *See* Alarmex Br. at 13 (the escrow funds "should not be incorporated into the bankruptcy estate for distribution *pro rata* with the general creditors, but rather returned to Alarmex in full"). The

specific remedy Alarmex seeks is to have a constructive trust imposed for its benefit over the funds that were supposed to be held in escrow. *See Cadle Co. v. Mangan (In re Flanagan)*, 503 F.3d 171, 182 (2d Cir. 2007) ("[T]he effect of a constructive trust in bankruptcy is to take the property out of the debtor's estate and to place the constructive trust claimant ahead of other creditors with regard to the trust *res*.") (citing 11 U.S.C. § 541(a)(1), (d) and *Sanyo Electric, Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.)*, 874 F.2d 88, 93 (2d Cir. 1989)).

As explained below, that claim is potentially meritorious, but Alarmex's ability to recover depends on a finding of fact that appears not to have been made. Alarmex is correct that an escrow agent—in this case, Dreier LLP—does not hold a legal or equitable interest in the property held in escrow, and that such property is thus not incorporated into Dreier LLP's bankruptcy estate. However, for a court to impose a constructive trust, those escrow funds must be identified: Either they must be held in a segregated sub-account or, if held in a commingled account, they must be specifically traceable back to Alarmex. Because the bankruptcy court did not clearly make the requisite findings of fact as to these matters, including whether Alarmex's escrow funds were held in a segregated account or, if in a commingled account, whether those funds are specifically traceable within the estate, the bankruptcy court's Order is vacated, and the case is remanded for further factual development.

The Court addresses, first, whether the funds in question were part of the bankruptcy estate; and second, whether the standards for a constructive trust have been met.

### A.    Funds Held in Escrow are Not Part of the Bankruptcy Estate

Under New York law, an escrow agreement is "an agreement pursuant to which funds are delivered to a third-party depositary, the grantor relinquishes control over the funds, and the

funds are to be delivered to a third party conditioned upon the performance of some act or the occurrence of some event." *Great Am. Ins. Co. v. Canandaigua Nat. Bank & Trust Co.*, 23 A.D.3d 1025, 1027 (4th Dep't 2005); *see also George A. Fuller Co. v. Alexander & Reed, Esqs.*, 760 F. Supp. 381, 386 (S.D.N.Y. 1991) ("Under New York law, for an instrument to act as a valid escrow agreement it must contain (a) an agreement as to the subject matter and delivery of the instrument; (b) a third party depositary; (c) delivery of the instrument to a third party conditioned upon the performance of some act on the happening of some event; and (d) relinquishment by the grantor.") (citations omitted).  It is undisputed that the funds at issue here were of this nature.  Alarmex and CJ Apparel entered into a valid escrow agreement, Dreier LLP was properly designated the parties' third-party escrow agent, and the funds were deposited with Dreier LLP to be held in escrow until performance of conditions designated in the contract. *See* APA ¶¶ 3.1(b), 10.6, 13.1.  The sum held in escrow is also undisputed:  Of the $800,000 originally placed in escrow, Dreier LLP retained $200,991.87 upon initiation of the Dreier LLP bankruptcy.  *See* Trustee's Objection Ex. A, Attachment 2.

The initial question, then, is whether, under New York law, a debtor in bankruptcy has a legal or equitable interest in funds, such as these, held in escrow.  If not, then those funds never became part of the Dreier LLP bankruptcy estate.

Section 541(a) of the Bankruptcy Code defines "property of the estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1); *see also In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 128 (2d Cir. 2002). Expressly excluded from the estate is property over which Dreier LLP exercised power "solely for the benefit of an entity other than the debtor."  11 U.S.C. § 541(b)(1).  Section 541(d) further qualifies the broad scope of the definition of "property of the estate" in § 541(a)(1) by providing

9

that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."  11 U.S.C. § 541(d).  "In other words, 'to the extent such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate.'" *In the Matter of O.P.M. Leasing Servs., Inc.*, 46 B.R. 661, 667 (Bankr. S.D.N.Y. 1985) (quoting 124 Cong. Rec. H11096 (Sept. 28, 1978) (remarks of Sen. DeConcini)).

Although bankruptcy law defines the term "property of the estate," *see In re Prudential Lines, Inc.*, 928 F.2d 565, 569 (2d Cir.), *cert. denied*, 502 U.S. 821 (1991), state law "normally determines the extent of the debtor's interest in property, absent an overriding federal policy," *Butner v. United States*, 440 U.S. 48, 55 (1979).  *See also Morton v. Nat'l Bank of New York City (In re Morton)*, 866 F.2d 561, 563 (2d Cir. 1989).  In considering whether the Alarmex escrow funds were brought into the bankruptcy estate, the Court therefore looks to how state law defines the relevant property interests.

Under New York law, "legal title to property placed in escrow remains with the *grantor* until the occurrence of the condition specified in the escrow agreement."  *In the Matter of O.P.M. Leasing*, 46 B.R. at 667 (citing *Press v. Marvalan Industries, Inc.*, 422 F. Supp. 346, 349 (S.D.N.Y. 1976)) (emphasis added).  The deposit of funds in escrow, however, creates "in the *grantee* such an equitable interest in the property that upon full performance of the conditions according to the escrow agreement, title will vest at once in him."  *Id.* (emphasis added).  In this case, the grantor and grantee were CJ Apparel and Alarmex, respectively; therefore, even after the funds were provided to Dreier LLP to hold in escrow, CJ Apparel possessed legal title to, and Alarmex possessed an equitable interest in, those funds.  By contrast, the escrow agent—Dreier

LLP—had neither legal title nor an equitable interest in the funds, as "escrow monies are held in trust and . . . an escrow agent is a trustee." *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d Cir. 2002) (citing *Oppenheim v. Simon*, 394 N.Y.S.2d 500, 502 (3d Dep't 1977)). As a trustee, the escrow agent has "a duty to act for any party with a beneficial interest in the trust corpus." *Oppenheim*, 394 N.Y.S.2d at 502; *see also Carruthers v. Flaum*, 450 F. Supp. 2d 288, 317 (S.D.N.Y. 2006) (escrow agreement "imposes a fiduciary duty on the escrow agent to both parties, not to deliver the escrow except upon strict compliance with the conditions imposed") (citation omitted).

Therefore, under New York law, Dreier LLP held the escrow funds in trust for Alarmex and CJ Apparel. And, under bankruptcy law, a debtor "does not own an equitable interest in property he holds in trust for another." *Begier v. I.R.S.*, 496 U.S. 53, 59 (1990); *see also McHale v. Boulder Capital LLC (In re The 1031 Tax Grp., LLC)*, 439 B.R. 47, 64 n.4 (Bankr. S.D.N.Y. 2010) ("The Court agrees that funds held in trust by a debtor for the benefit of a third party are not funds of the estate.").

Accordingly, because Dreier LLP did not have legal title to, or an equitable interest in, the escrow funds, those funds were not property of Dreier LLP's estate under 11 U.S.C. § 541(a), and thus were not incorporated into that estate. *See also In the Matter of O.P.M. Leasing*, 46 B.R. at 667–68 ("[C]ourts of bankruptcy recognize that money held in escrow is not property which vests in the trustee in bankruptcy.") (citing *Gulf Petroleum, S.A. v. Collazo*, 316 F.2d 257, 261 (1st Cir. 1963)); *accord In re Jazzland, Inc.*, 322 B.R. 610, 616–17 (E.D. La. 2005) *aff'd*, 161 F. App'x 436 (5th Cir. 2006) ("Once a true escrow has been found, the critical, and frequently litigated, question is whether the assets held in escrow are property of the estate under section 541. In general, most courts have held that assets in escrow are not property of the

estate, even though the debtor may have certain rights under the escrow agreement and, therefore in the assets escrowed.") (citation omitted).

Therefore, Alarmex's first argument on appeal—that it is entitled to a secured claim against the bankruptcy estate—lacks merit. As stated above, a claimant to funds held by an estate in bankruptcy may receive a secured claim if the claimant holds a lien "on property in which the estate has an interest." *See* 11 U.S.C.A. § 506(a)(1). Because the escrow funds at issue are not part of the bankruptcy estate, however, any lien Alarmex could have would be on property in which the estate has no interest. Put differently, Alarmex may, or may not, be entitled to obtain the practical relief it seeks—*i.e.*, to get its money back, 100 cents on the dollar—but the proper form for such relief would not be a secured claim against the bankruptcy estate.

### B.     Alarmex Is Entitled to Recover the Escrow Funds if they Were Held in a Segregated Account, or if they Can Be Traced Within the Estate

The determination that the escrow funds were not part of the estate does not, however, resolve Alarmex's application for a constructive trust over its escrow funds, assuming those funds were improperly incorporated into the bankruptcy estate. *See In re Flanagan*, 503 F.3d at 182 ("[T]he effect of a constructive trust in bankruptcy is to take the property out of the debtor's estate and to place the constructive trust claimant ahead of other creditors with regard to the trust *res*.") (citations omitted).

"New York law does not grant a trust creditor a preference over general creditors merely because he is a trust creditor; he must follow and identify his funds." *Cassirer v. Herskowitz (In re Schick)*, 234 B.R. 337, 345 (Bankr. S.D.N.Y. 1999) (citing *In re Hicks*, 170 N.Y. 195, 199 (1902)). "The same tracing requirement applies under federal bankruptcy law." *Id.* at 342–43 (citing *Cunningham v. Brown*, 265 U.S. 1, 11 (1924)).

As the Second Circuit has explained in the context of deciding whether a debtor had to account for missing funds:

> [P]roperty converted, embezzled, or otherwise taken by the bankrupt, or obtained by him by fraud, can be claimed *from* the bankrupt estate only so long as it can be definitely traced, with the consequence that an attempted repayment by the bankrupt prior to bankruptcy is a preference, except when made from the very property taken. . . .  *The rule applies even to property which the bankrupt had held in trust.*

*Morris Plan Indus. Bank v. Schorn*, 135 F.2d 538, 539 (2d Cir. 1943) (emphases added); *see also In re Schick*, 234 B.R. at 343 (citing *Jenkins v. Chase Home Mortgage Corp. (In re Maple Mortgage, Inc.)*, 81 F.3d 592, 596 (5th Cir. 1996); *McLemore v. Third Nat'l Bank (In re Montgomery)*, 983 F.2d 1389, 1393 (6th Cir. 1993); *Canal Corp. v. Finnman (In re Johnson)*, 960 F.2d 396, 401–02 (4th Cir. 1992); and *Danning v. Bozek (In re Bullion Reserve of North Am.)*, 836 F.2d 1214, 1218 (9th Cir.), *cert. denied*, 486 U.S. 1056 (1988)).  In short, the claimant of funds held in trust or in escrow bears the burden of tracing those funds "to the specific property at issue."  *In re Schick*, 234 B.R. at 344; *see also id.* at 345 ("Proof of a trust or escrow . . . is not enough"; the beneficiary "must also trace the payments to the true or equitable owners.").

In light of these standards, a trust creditor is entitled to a constructive trust over its escrow funds only if it can identify its specific funds within the bankruptcy estate.  Under the law, there are two methods by which a trust creditor may accomplish this:  First, it may identify a segregated sub-account holding its funds.  Second, if the funds were instead commingled, it may trace its funds to a particular account within the estate, to the exclusion of other funds.  *See id.* at 342 ("Under New York law, the beneficiary of trust funds deposited into a commingled account must identify or trace his funds to retain his priority over unsecured creditors.") (citing *Sonnenschein v. Reliance Ins. Co.*, 353 F.2d 935, 937 (2d Cir. 1965) (collecting cases)).

As to the first method:  The record below does not conclusively establish whether the funds at issue were, or were not, held for Alarmex in a segregated sub-account.  The Trustee asserts that she failed to find a segregated sub-account labeled under the name of Alarmex or CJ Apparel.  Trustee Br. at 2.  From that fact, the Trustee inferred that the escrow funds must have been deposited into the 5966 account and became "hopelessly commingled" with the proceeds of the note fraud scheme.  *Id.*  But the bankruptcy court did not clearly make any such finding.  On the contrary, the bankruptcy court made no factual findings with respect to Alarmex's claim, and counsel for the Trustee advised the Bankruptcy Judge that no factual findings were necessary.  *See* Feb. 11, 2014 Tr. at 10–11 ("MR. LODEN [Counsel for the Trustee]:  So we can stipulation [sic] to probably 99 percent of the facts that Alarmex relies upon for [its] claim.  THE COURT:  So what's the issue of fact?  MR. LODEN:  I don't believe there is an issue of fact, Your Honor.").

The Trustee may ultimately prove correct that Dreier LLP failed to segregate Alarmex's escrow funds and instead commingled the funds within the 5966 account.  Upon close attention by the parties, the point may, ultimately, not be disputed.  But the Trustee is not endowed with the power to find facts.[4]  Because this record does not establish whether or not Alarmex's funds were held in a segregated sub-account, and because the bankruptcy court did not make findings as to this point, the case must be remanded to that court for further factual development.

---

[4] The Trustee asserts that the bankruptcy court made the following factual findings:  that (1) the escrow funds at issue were deposited into the 5966 account, (2) the funds in the 5966 account were forfeited to the Government, and (3) the funds were never property of the estate.  *See* Trustee Br. at 7–8.  The bankruptcy court did not, however, explicitly say this—the Court takes the Trustee to mean that the bankruptcy court's ruling logically implies such conclusions.  *See* Feb. 11, 2014 Tr. at 10–11.  Perhaps so, but the record is not certain on this point.  On remand, the bankruptcy court can remove any doubt by reciting the facts it finds and the basis for these findings.

On remand, if the bankruptcy court determines that the escrow funds at issue were held in a commingled account, then a constructive trust may still be justified if Alarmex's funds can be traced to the exclusion of other funds.  It is "black letter law that the commingling of funds in a trust account does not destroy or alter the nature of the deposited funds."  *In re Dreier V*, 452 B.R. at 419 (citation omitted); 106 N.Y. Jur.2d Trusts § 238 (2011) ("A trust follows funds into a bank account, even where they are mixed with private funds of the trustee, since the act of the trustee in commingling trust moneys in a mixed bank account does not, of itself, destroy the identity of the trust moneys so as to prevent their reclamation.").  Therefore, if the escrow funds were commingled, Alarmex may still obtain a constructive trust if it is able to trace its "trust funds" to a specific account within the estate.  *See Action Abstract, Inc. v. Matrix Capital Bank (In re AppOnline.com, Inc.)*, 315 B.R. 259, 276 (Bankr. E.D.N.Y. 2004) (the creditor must "trace its funds in order to lay claim to" those funds).  The record does not, however, contain any finding on this point by the bankruptcy court, let alone reveal the factual basis for such a finding.

Should the bankruptcy court conclude on remand that Alarmex's escrow funds were held in a commingled account, the court should then engage in fact finding as to whether Alarmex can trace its funds that were held in escrow to a specific location within the estate.  To be sure, ordinarily, the "right of a Ponzi scheme victim to trace his investment and gain priority over other victims is severely limited."  *Dreier III*, 429 B.R. at 134 (citing *SEC v. Credit Bancorp. Ltd.*, 290 F.3d 80 (2d Cir. 2002).  But Alarmex, whose money was held by Dreier solely in an escrow capacity, stands in different shoes from a Ponzi scheme victim, so as to make a factual inquiry into whether its escrow funds today can be traced and isolated worthwhile.[5]  In the event

---

[5] As the Trustee notes, other courts in this District have declined to impose constructive trusts in claims brought by other clients of Dreier LLP, and, for the most part, have rejected the notion that "client" and "investor" victims should be treated differently.  *See, e.g.*, *Dreier I*, 682 F.

that the facts show that Alarmex's funds can be successfully traced, the bankruptcy court is, of course, at liberty then to consider other arguments that the parties, including the Trustee, may make as to the viability and availability of a constructive trust.

Two additional points merit making.  First, on the record before this Court, granting Alarmex the opportunity to attempt to trace does not appear inherently futile.  The Trustee's conclusion that Alarmex's funds were deposited in the 5966 account appears to derive entirely from her inability to identify a segregated sub-account labeled under the name Alarmex or CJ Apparel.  But it does not appear that the bankruptcy court, or for that matter Alarmex, was ever given access to banking records that would identify the account(s):  (1) into which Dreier LLP deposited the $800,000 that was supposed to be held in escrow; or (2) from which Dreier LLP drew to pay Alarmex and CJ Apparel the approximately $600,000 in escrow funds paid out before Dreier was arrested.  *See* Alarmex Br. at 2 ("[T]he Trustee has consistently refused to provide Alarmex with an accounting of the Escrowed Funds during the pre-petition and post-

---

Supp. 2d at 422 (declining to grant constructive trust for the benefit of Paul Gardi, a defrauded law firm client of Dreier LLP; "both Gardi and Dreier's 'note fraud' victims were unequivocally part of Dreier's 'unified scheme to defraud,'" and thus, they are "similarly situated, and *pro rata* distribution is appropriate").  No previous case, however, concerned funds that by agreement were required to be held in escrow.  And, as noted, escrow funds present a distinct situation, because the property at issue is held in trust and, therefore, the escrow agent has no legal or equitable interest in that property.  With respect to Dreier's other "client" victims, such as Gardi, no valid trust or escrow account existed—in Gardi's case, Dreier "forged Gardi's signature to a settlement agreement between JANA (a hedge fund) and a company controlled by Gardi, and then arranged for JANA to wire the settlement funds, in the amount of $6.3 million, into a trust account controlled by Dreier, who then used the funds for himself."  *Id.* at 422.  Under New York law, "actual delivery or a legal assignment of the property with *intent* to pass legal title to the trustee" is a requirement for a valid express trust.  *In re Schick*, 234 B.R. at 344 (emphasis added).  Because Gardi did not intend to pass legal title to Dreier, a valid trust was not created when Dreier fraudulently obtained title to Gardi's funds.  In other words, Dreier simply stole the funds at issue without Gardi's knowledge.  Here, by contrast, it is undisputed that the APA created a valid escrow account, and that Dreier LLP was merely the escrow agent.

petition periods, although she undoubtedly has access to this information."); Alarmex Reply Br. at 2 n.2 (the Trustee "has knowledge as to which account the Escrowed Funds were deposited into and from which account the previous payments of escrowed funds to Alarmex were made, but has consistently refused to share this information with Alarmex, and has provided no evidence of her contention to the Bankruptcy Court").  Conceivably, on remand, if Alarmex is able to establish that the escrow funds were deposited into a specific account, and if the only withdrawals from that account at any point thereafter were the $600,000 paid out in escrow, Alarmex may have a substantial argument that it can definitively trace the balance of its escrow funds to that account.

Second, the Court is mindful that certain assets held by Dreier LLP (specifically, the 5966 account) were previously forfeited to the Government.  In the event that the bankruptcy court finds that Alarmex's funds were deposited in the 5966 account, a substantial argument would then exist that Alarmex's claim is not properly made before the bankruptcy court at all, and that Alarmex is entitled to no remedy in that court at all, even as an unsecured creditor. Instead of seeking a constructive trust from that court, Alarmex's remedy would then appear to take the form of a claim with respect to the forfeited funds, if such a claim can still be timely made.[6]  Should the bankruptcy court's fact finding determine that Alarmex's escrow funds were

---

[6] Judge Rakoff's Final Order of Forfeiture, issued on August 27, 2010, gave parties with claims against the forfeiture 60 days to file a petition with the Court.  *See United States v. Dreier*, No. 09 Cr. 85 (JSR), Dkt. 156; *see also* 21 U.S.C. § 853(n)(2) ("Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property."); Fed. R. Crim. P. 32.2(c).  The Trustee therefore asserts that any claim Alarmex may have had against the Government with respect to those funds is now time-barred.  *See* Trustee Br. at 10.  On this record, however, it is entirely unclear whether Alarmex has pursued a claim against the property forfeited to the Government.

contained in the forfeited 5966 account, nothing in this decision bars it from dismissing Alarmex's claims, on the grounds that they are properly made in a forum other than bankruptcy court.

## CONCLUSION

For the foregoing reasons, the February 14, 2014 Order of the U.S. Bankruptcy Court is vacated. The case is remanded for further factual development and for further proceedings consistent with this decision.

The Clerk of Court is directed to terminate all pending motions and to place this case on the Court's suspense docket.

SO ORDERED.

Paul A. Engelmayer

Paul A. Engelmayer
United States District Judge

Dated: August 6, 2014
       New York, New York

18